HOMEDAS RIENDEAU, Appellant, *v.* ROSELLE BULLOCK et al., Respondents.

1. APPEAL — QUESTIONS OF FACT. When an order of General Term, reversing a judgment entered upon a referee's report, states no ground for the decision, and must, therefore, be presumed to have been upon the law and not upon the facts (Code Civ. Pro. § 1338), an exception to a conclusion of law as found is of no avail upon appeal, when such conclusion follows and is in accordance with the finding of fact on the subject.

2. CONTRACT — WAIVER. In an action brought to recover damages for the defendants' breach of a contract, in which the plaintiff agreed to sell and the defendants to take all the ice in his storehouses, to be there delivered on boats to be furnished by the defendants during June, July and August, at prices per ton which increased twenty-five cents for each month as the season progressed, the evidence showed that the defendants furnished no boats until late in August, and, after taking only a portion of the ice in the storehouses, refused to send more boats or take more ice; that certain correspondence then passed between the parties, in which the plaintiff stated that if the defendants would take all the ice by September tenth he would make it only twenty-five cents per ton extra, and, subsequently, that to meet the defendants "friendly," he would load the balance of the ice at the August price; which last communication the defendants acknowledged, but stated to be too late. The defendants claimed that the correspondence constituted a waiver by the plaintiff of the conditions of the contract. *Held*, assuming the contract to be executory, but one in which time was of the essence, that the plaintiff's offer to renew the contract or to continue the delivery of the ice after the defendants' default was but an attempt to adjust the matter, and was not a waiver of any of his rights which had then accrued under the contract.

3. DEMURRAGE. By the contract, the plaintiff agreed to load all boats within twenty-four hours after arrival at the storehouses, and, in case of failure, to pay ten dollars per day on each boat after the expiration of twenty-four hours. *Held,* that a claim of the defendants for demurrage, under this provision of the contract, was properly disallowed, under the circumstances.

*Riendeau* v. *Bullock* (66 Hun, 628), reversed.

(Argued October 9, 1895; decided October 22, 1895.)

APPEAL from order of the General Term of the Supreme Court in the third judicial department, made November 22, 1892, which reversed a judgment in favor of plaintiff entered upon the report of a referee and directed a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*G. H. Beckwith* for appellant. The contract passed title to all the ice to defendants. (1 Greenl. on Ev. 277; 13 N. Y. 566; *Sanger* v. *Waterbury,* 25 Wkly. Dig. 224; 19 N. Y. 330; 51 N. Y. 437; 25 N. Y. 320; 42 N. Y. 118; 71 N. Y. 291; 116 N. Y. 371; 44 N. Y. 499; *Stephens* v. *Santee,* 49 N. Y. 35; *Van Hoozer* v. *Cory,* 34 Barb. 10; *Conderman* v. *Smith,* 41 Barb. 404; *Anderson* v. *Reed,* 106 N. Y. 333; *Kimberly* v. *Patchen,* 19 N. Y. 330; *White* v. *Wilks,* 5 Taunt. 176.) Considering the contract as only executory, the referee's conclusion was correct upon the facts in this case. (108 N. Y. 292; 44 Barb. 211; *Van Brocklen* v. *Smeallie,* 140 N. Y. 70; *Mansfield* v. *N. Y. C. & H. R. R. R. Co.,* 102 N. Y. 205; *Kirtz* v. *Beck,* 113 N. Y. 228; 1 Den. 59; 3 Den. 366; 48 Barb. 596; 5 Daly, 335; 9 Daly, 79; 25 Hun, 425; 3 E. D. Smith, 102; 113 N. Y. 222; 102 N. Y. 205; 48 Barb. 597; 108 N. Y. 292; 100 N. Y. 131; 8 J. & S. 113.) In this case the plaintiff is entitled to recover the three dollars and twenty-five cents per ton, without deduction for the cost of loading, he having loaded two boats which defendants refused to accept, and having offered to load others and defendants having failed to furnish boats for him to load. (*Canda* v. *Wick,* 100 N. Y. 131; 107 N. Y. 647; 16 N. Y. 489; *Griffin* v. *Colver,* 16 N. Y. 494; 100 N. Y. 131.)

*R. Corbin* for respondents. When there is an express agreement about demurrage, parties are held to it strictly. (26 N. Y. 85.) A person is not excused from performing a contract by law or order of a foreign government. (19 Wend. 500; 1 Eng. Leading Cas. 338; Blackburn on Sales, 472, 477.) A deliberate repudiation of the stipulations of a contract gives the other party a right to assent to such abandonment and treat the contract as dissolved. (87 N. Y. 465, 466; 4 Wend. 290.) The plaintiff was bound to deliver under the August contract. (93 N. Y. 44; Benj. on Sales, § 857.)

*W. H. Dunn* for respondents Averill and Holbrook. The contract between the parties was an executory contract of sale. (*Stephens* v. *Santee,* 49 N. Y. 35; *Joyce* v. *Adams,* 8 N. Y. 291; *McDonald* v. *Hewitt,* 15 Johns. 349; *Ward* v. *Shaw,* 7 Wend. 404; *Ulman* v. *Day,* 38 Hun, 298; *Anderson* v. *Reed,* 106 N. Y. 333; *Cole* v. *U. S.,* 23 Ct. of Claims Rep. 341; *Armstrong* v. *S. P. Co.,* 48 N. W. Rep. 233; *Bonnell* v. *Griswold,* 89 N. Y. 122; *Health Dept.* v. *Purdon,* 99 N. Y. 237; *Bennett* v. *Bates,* 94 N. Y. 354.) Having contracted absolutely to load the boats within twenty-four hours after arrival, and forfeit ten dollars per day on each boat if he defaulted, unforeseen contingencies (no matter of what nature) are not available to plaintiff as a defense to the recovery of the damages contracted for. (*Ward* v. *H. R. B. Co.,* 125 N. Y. 236; *Clement* v. *Cash,* 21 N. Y. 257; *Dakin* v. *Williams,* 17 Wend. 448.) The judgment of reversal must be affirmed, if for no other reason than that the referee erroneously refused to allow defendants the proper effect provided by contract for plaintiff's delay in loading the boats. (*Ward* v. *Craig,* 87 N. Y. 550.)

HAIGHT, J. This action was brought to recover damages for the breach of a contract for the sale and delivery of a quantity of ice.

On the 31st day of May, 1890, the plaintiff entered into a contract in writing with the defendants in and by which he agreed

to sell, and they agreed to take, *all* the ice in his storehouses on Chambly canal, to be delivered F. O. B. on canal boats at such storehouses, at $2.75 per ton for all delivered during the month of June, 1890, and $3 per ton for all delivered during the month of July, 1890, the weight to be determined by the weighlock weight at Waterford.  It was also agreed that plaintiff would load all the boats within twenty-four hours after their arrival at the storehouses, and in case of failure would pay ten dollars per day on each boat after the expiration of twenty-four hours.  The ice was to be good, sound, clear and merchantable.  On the 21st day of July, 1890, the above-mentioned agreement was modified by the parties so as to extend the time during which the defendants were to take the ice, through the month of August, they agreeing to pay twenty-five cents per ton in addition to the July price for all of the ice taken during the month of August.

The first boat that the defendants sent for the ice arrived at the plaintiff's storehouses on the evening of the 27th day of August, and during the remaining days of August five other boats arrived, making six in all which were loaded by the plaintiff with ice during the remaining days of August and the early part of September.  No other boats were sent by the defendants for the remaining ice, they refusing to take more. It was for this breach of the contract that this action was brought.  The referee has found that there remained in the ice houses 805⅝ tons of good, sound, clear and merchantable ice which became a total loss to the plaintiff, and that he was entitled to recover the contract price for August therefor, together with the amount due and unpaid upon the ice taken by the defendants, and ordered judgment for the amount thereof.

The order of the General Term reversing the judgment does not state the grounds upon which its decision was made. We must assume, therefore, that the reversal was upon the law and not the facts.  (Code of Civil Procedure, section 1338.)  We are thus limited to a review of the exceptions taken to the admission of the evidence and to the conclusions of law.

Upon the trial evidence was given on behalf of the plaintiff tending to show the location of his ice houses upon the canal, the depth of the water, the place where the ice was to be taken ; that but one boat could be loaded at a time ; that this was talked over and understood by the defendants, and that the ice became valueless after defendants refused to take it. Exceptions were taken to the admission of this evidence, but it was so clearly competent that further discussion is unnecessary. The evidence as to the expenses of the plaintiff in caring for the ice after the defendants refused to take it, and the expenses incurred by him in a fruitless effort to sell and dispose of that which remained, becomes unimportant, for the reason that the referee did not allow any such expenses in the judgment awarded by him. But one exception was taken to the conclusions of law as found, and that was as to the amount the plaintiff was entitled to recover. Inasmuch as this conclusion follows and is in accordance with the finding of fact upon the subject, the exception is of no avail.

We are thus brought to the consideration of the real question in the case, and that is, was there a waiver by the plaintiff of the conditions of the contract? Requests to so find were made by the defendants and refused by the referee. The facts bearing upon this question are undisputed and they are in substance as follows : On the 27th of August the plaintiff wrote to the defendants that "the ice was to be all taken before 1 Sept. I have had a great loss in keeping it over to try and meet you, so my intendance is if you take it all by the beginning of Sept., say in the first ten days, to make only twenty-five cent extra on whatever be taken after this month and up to 10th Sept. Please let me know if you accept this offer." On the 29th of August the defendants replied, saying : " The market will not stand it, we cannot get our money back as it is, and rather than pay an advance would prefer after you load the boats we put in this month that you sell it elsewhere." On September 4th they wired the plaintiff asking the number of tons he still had and whether he intended to load any more boats at the August prices. To which the

plaintiff answered, that he expected to have in all about six-
teen boatloads.   On September the 6th the plaintiff was asked
to answer that part of the defendants' telegram relating to
price, and on the 7th he answered that he would call the four
boats loaded at August figures and the balance at twenty-five
cents extra provided the defendants would keep sending on
the boats.   On the 8th they replied : " All right, you need not
load any more boats for us as we cannot pay the advance."
To this the plaintiff on the same day replied :  " To meet
you friendly will load balance of ice at August price provided
you take it by the 20th inst."   To which they replied : " Tele-
gram received, but too late."

In considering these facts we must not overlook the situa-
tion of the parties or the events that had already transpired.
For the purposes of the case we shall assume, as the respond-
ents contend, that the contract was executory.   It pertained
to the sale of ice by the ton which it appears would melt and
diminish during the summer months.   This fact is recognized
by the parties in the contract by providing a higher rate for
each month as the season progresses.   It is quite evident,
therefore, that it was the intention of the parties that time
should be of the essence of the contract.   Once the contract
had been changed by extending the time upon the considera-
tion of twenty-five cents advance.   June, July and a part of
August had passed and the defendants had not taken a pound
of ice.   The plaintiff was still holding the ice under the con-
tract, waiting for the defendants to take it, although it was
daily shrinking away.   He finally became uneasy.   This is
apparent from his letter of the 18th of August, in which he
asks the defendants to see about sending boats at once to load
" their ice, for time was getting short."   Again he wires them,
asking if boats were coming, and thus the time passes until
the 27th of August, and not a boat arrives to be loaded.   It
was under these circumstances that the letter of that date was
written.   Three days then remained in which the defendants
were to take the ice.   He knew that it was not possible to load
all of the ice within that time.   The defendants had received

one extension of time and he offered them another. The let-
ter contained no refusal to perform on his part, and related
only to the ice that was not taken during the month of
August. As to that which was left he proposed a charge of
twenty-five cents extra. It was but an offer, a proposal, as we
understand it, to continue and amend the existing contract,
and nothing more. It was evidently so understood by the
defendants, as is apparent from their reply. The same is
equally true with reference to the plaintiff's dispatch of Sep-
tember 7th. It was a mere offer or proposal in reference to
renewing the contract. He refused nothing, he waived noth-
ing. The defendants were then in default. The time within
which they had agreed to take the ice had expired. They
were then liable for the damages which the plaintiff had sus-
tained. His offer to renew the contract, or to continue the
delivery of the ice, was but a friendly attempt on his part to
adjust the matter between them, and in no sense was intended
as a waiver of any of his rights which had then accrued to
him under the contract.

As we have seen, the defendants refused to take the ice on
the 8th of September. On the same day the plaintiff wired
them that he would continue to load the ice at August prices,
providing they would take it all before September 20th.
Here was an immediate tendering of performance on his part.
He could do no more. The defendants were to furnish the
boats at his storehouses to be loaded. This was to be done on
or before the first of September. They had not performed
the conditions of the contract in this regard. Negotiations
had taken place for a renewal of the contract, which had been
unsuccessful. Then plaintiff made his offer of September 8th,
and that was rejected. It appears to us that he did all that
he was required to do, and that the defendants cannot escape
liability for the damages which he sustained.

Treating the contract as executory, it became the duty of
the plaintiff upon the refusal of the defendants to take the ice,
to dispose of it to the best advantage possible. (*Gray* v. *Central
R. R. Co. of New Jersey*, 82 Hun, 523.) This he attempted

to do. He not only wrote dealers, but he sent a person to New York city to offer it to any ice dealers that could be found. But, owing to the advance of the season and the distance the ice was from the market no sale could be effected, and the ice became a total loss.

It is contended that the referee erred in not allowing the defendants demurrage upon the boats that were loaded by the plaintiff. It is not clear that this question is raised by any exception that can be now reviewed. The referee was requested to find certain facts upon this subject, which was refused. The General Term might have reviewed the facts bearing upon this subject, but, as we have seen, it has not done so; at least, we are obliged to so assume under the provisions of the Code heretofore referred to. No conclusion of law appears to have been found or demanded upon the subject. But, assuming the question was raised and is properly here for consideration, we think that it should not be held that an error was committed by the referee in not allowing the defendants' claim for demurrage. They understood the situation of the premises and that but one boat could be loaded at a time. The plaintiff had stated that he could load the boats if they were not sent in a nest. It was evidently contemplated that the boats would be sent along from time to time so that but one boat would be required to be loaded at a time, at least, the referee was justified in so finding. Boats were hired to go and get the ice; they were loaded, and it appears that no demurrage was demanded or claimed on the part of the captains.

The judgment of the General Term should be reversed, and that entered upon the report of the referee affirmed, with costs to the plaintiff in all the courts.

All concur, except Andrews, Ch. J., not voting.

Judgment accordingly.